CARITY MOTORS, INC. v. M. J. EICHTEN.[1]

June 23, 1933.

No. 29,315.

[1]Reported in 249 N. W. 190.

N. R. Ryerson and Thomas F. Reed, Jr., for appellant.
Alexander Seifert and W. R. Werring, for respondent.

DIBELL, Justice.

Action to recover for the conversion of personal property of which the plaintiff was the mortgagee under a junior mortgage and the defendant a senior mortgagee. There were findings for the defendant, and the plaintiff appeals from an order denying its motion for a new trial.

In 1928, 1929, and 1930, Walter Krueger and August Krueger, his brother, were farming a rented half section in Redwood county and were the owners of live stock, farm machinery, and appliances used in connection with the farming operations. They became indebted to the State Bank of Clements, in the same county, upon a number of notes in 1928 and 1929 aggregating a few thousand dollars, secured by chattel mortgages. In 1929 the Kruegers became indebted to the plaintiff, Carity Motors, Inc., for machinery purchased, the precise amount of which is not found and is not material. To protect itself the Carity company paid the State Bank of Clements the amounts due upon the notes and mortgages which the Kruegers had given it and took indorsements and assignments. Afterwards these obligations were acquired by the defendant, Eichten, and on November 22, 1929, it so stood that the Kruegers owed the defendant upon a note of $1,963.19, due September 1, 1930, with interest at eight per cent, secured by a chattel mortgage. There is no controversy about this. Altogether there were many notes and mortgages involving the bank, the Krueger Brothers, the Carity company and the defendant—perhaps 30 or 40 with connected documents. Their transactions are difficult to state in precise detail. There are 11 pages of findings, which state with exactness what the transactions were, and they could hardly be stated in full in less space. The parties had trouble in disentangling their transactions. There was an amended answer, and the case was reopened and additional testimony was taken. There is confusion, and we make no

attempt to state the details of the controversy further than is essential to a determination of the parties' rights.

There was a public sale by the Krueger Brothers of the property covered by this $1,963.19 mortgage under a written agreement between Eichten and the Kruegers. The court finds that the plaintiff assented to it. It was dated September 4, 1930. This provided, as far as we need now quote, as follows:

"This agreement, made this 4th day of September, 1930, by and between Walter H. E. Krueger, and August A. Krueger known as Krueger Brothers, as parties of the first part, and M. J. Eichten, of Wanda, Redwood county, Minnesota, as party of the second part.

"Witnesseth, that whereas, the first parties did on November 22nd, 1929, execute and deliver to M. J. Eichten, a note dated on that date, for $1,963.19, secured by a chattel mortgage, on a large amount of personal property, therein fully described and properly filed for record, including the 1930 crops upon the lands therein described, all in Redwood county, Minnesota, which said note and chattel mortgage is still unpaid as between the parties hereto:

"And whereas, the first parties are desirous of holding a public auction sale and sell all of the above described personal property, including the 1930 crops therein named, to pay and satisfy said debt of the second party herein, or so much thereof as may be necessary to pay said M. J. Eichten in full;

"And whereas, the first parties owe other creditors in various amounts, some of whom hold second and third chattel security against the same property above listed; and it is the desire that all of the creditors of said first parties be paid, in full, in accordance with their date of priority:

"Now therefore, in consideration of the payment of the sum of $1.00 this day made by the second party to the first parties, the receipt whereof is hereby acknowledged, and in consideration of the second party permitting the first parties to hold an ordinary public auction sale, of all of the personal property therein described and listed, and thereby obtaining a better price therefor; the first parties do hereby promise and agree to pay out of the proceeds of

said public auction sale the following items in the following manner to-wit:

"1. All of the expenses, costs and disbursements in connection with said public auction sale.

"2. To pay to the second party so much as may be due him from first parties, with interest on said note and chattel mortgage above described, together with all costs, disbursements and advances made by him for them.

"3. To pay to the next chattel mortgage holder against said property so much as may be due him or thereon, or so much as may be paid from the proceeds of said sale.

"4. To pay to the first parties, for their own use, such portion of said proceeds as may be left, after all of the foregoing items have been taken care of, paid and discharged.

"Dated at Clements, Minnesota, September 4th, 1930."

Now going to the plaintiff company's claim as far as it can affect the result, we find it about this: On August 8, 1928, the plaintiff sold a second-hand partially equipped thresher to Krueger Brothers for $450. They were paid $100 in cash, and the $350 was evidenced by the usual conditional sales contract dated the day stated and filed in proper time. It became due in a year. The Kruegers undertook to use the machine, but it did not work and they returned it. The plaintiff threatened to purchase the prior notes due the State Bank of Clements and foreclose the mortgages of the Kruegers; and as a result the Kruegers gave the Carity company a note for $350 plus interest due on demand, secured by chattel mortgage dated July 29, 1929, covering the machine and some other property in connection with it. The Kruegers claim to have a just ground of rescission, but they do not seek to enforce it, and at the most, as now to be noted, the plaintiff has a right of action against the Kruegers, who are not parties to this action, and upon their rights no comment should be made.

This new mortgage of $377 gave the Carity company a junior right against some of the property covered by the $1,963.19 mortgage. The conditional sale contract covered only the thresher sold.

314

The property was sold in pursuance of the agreement, partly quoted above, and the sale did not realize enough to pay Eichten's mortgage. There is no evidence that the worth of the whole property covered by the Eichten mortgage was in excess of Eichten's debt, which was the prior one. The evidence is to the contrary. Eichten's debt was not paid in full, and there was nothing to go to another creditor.

This was not a chattel mortgage foreclosure sale. It was a sale of property that the Kruegers, the owners, wanted made because they could not lease a farm and could not continue farming or use their farm property. They were in debt on an eight per cent basis, and in such years as 1928, 1929, and 1930 they could not go on. The evidence indicates that Eichten was a sort of banker for them. He received the products of the farm and bought them what was necessary in order to keep them going. There is not the slightest indication that he did not deal with them fairly and honestly, and there is nothing in the court's accounting which is not correct. If the selling by the Kruegers of their own property be deemed a conversion by Eichten, still the plaintiff could not recover, for it suffered no damages. Eichten was the prior lienholder, and the amount and the value of the mortgaged property would not have reached the plaintiff's mortgage. We have examined the evidence and the numerous documents and the charge of the court from every angle and with much patience. There is no possible theory upon which the plaintiff can recover of the defendant, and we do not feel bound to detail the facts further.

■ It appears that one chattel mortgage was withdrawn by mistake from the register of deeds office, and the plaintiff claims that this was a satisfaction under 2 Mason Minn. St. 1927, § 8347. The court found that there was a mistake, and in effect reinstated the mortgage. There is nothing troublesome about this. The court did just what should be done. 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 6264, and cases cited. The plaintiff had no contending equities. And of course the taking of a new mortgage was not payment unless so intended. Geib v. Reynolds, 35 Minn. 331, 336, 28 N. W. 923; Munson v. Bensel, 169 Minn. 434, 211 N. W. 838.

Some of the mortgages provided for future advances. There was no fraud on the part of the mortgagor or mortgagee. The plaintiff itself knew of the situation. The mortgages were valid, under the facts involved, whether for existing or later created debts. Berry v. O'Connor, 33 Minn. 29, 21 N. W. 840; Finlayson v. Crooks, 47 Minn. 74, 49 N. W. 398, 645; Anderson v. Liston, 69 Minn. 82, 72 N. W. 52; Erickson v. Ireland, 134 Minn. 156, 158 N. W. 918. The evidence is clear enough to sustain a finding that the plaintiff knew of the doings between the Krueger Brothers and Eichten. It was charged with notice of intended future advances.

Order affirmed.

