# IDA M. HIRLEMAN v. IRWIN H. NICKELS AND OTHERS.[1]

December 14, 1934.

No. 29,961.

H. V. Harn, Arthur C. Wangaard, and Carl F. Granrud, for appellant.

C. J. Eisler, for respondent.

[1]Reported in 258 N. W. 13.

JULIUS J. OLSON, JUSTICE.

Defendant Emma D. Jansen appeals from an order denying her motion for a new trial.

Suit was brought by plaintiff against Irwin H. Nickels and wife, Axel P. Johnson and wife, and appellant, Emma D. Jansen, to foreclose a mortgage upon real estate and to have the mortgage so sought to be foreclosed declared to be a superior claim and charge against the property covered thereby to a mortgage held and owned by defendant Jansen, she being the only defendant making any appearance. Hereafter we shall refer to her as if she were the only defendant.

In her brief defendant makes this statement:

"There is no dispute as to the facts in this case, the question involved being purely one of law. By stipulation of counsel, the only issue is the matter of priority between the mortgage held by appellant and a mortgage held by respondent, Ida M. Hirleman."

The trial court found and determined the issues in conformity with plaintiff's contentions. These findings may be summarized thus: On May 28, 1926, William A. Taylor and wife were the owners in fee of the real estate involved in this suit. Peck & Fontaine, Inc. loaned to them $2,600 in cash, evidenced by a principal mortgage note in that sum, bearing interest at the rate of seven per cent per annum, payable semi-annually. The interest was evidenced by coupon notes. The note ran for a period of three years, that is to say, to May 28, 1929. To secure the loan so made Taylor and wife executed a mortgage to said Peck & Fontaine, drawn in the usual form, upon the real estate involved in this cause. The mortgage tax was duly paid and the instrument promptly recorded. On July 18, 1927, said note and mortgage were duly assigned to the present plaintiff, she paying the full face value thereof. The assignment was in writing and was promptly recorded on July 18, 1927. Thereafter and on October 17, 1928, defendants Irwin H. Nickels and Jeannette G. Nickels, his wife, having become the owners of this property subject to said mortgage, executed a note and mortgage to the defendant Jansen in the sum of $750. That

mortgage was expressly made subject to the first mortgage of $2,600 held and owned by plaintiff. That mortgage too was promptly recorded. There is no question of the validity of both of these mortgages. On May 28, 1929, plaintiff agreed with defendants Nickels and wife, owners of the fee title, and Axel P. Johnson and wife, contract purchasers of the mortgaged premises, to extend or renew her first mortgage for an additional period of three years. Plaintiff knew nothing about the mortgage held by defendant. She relied wholly upon the representations made to her by the employes of Peck & Fontaine and acted in good faith and in ignorance of the existence of the intervening lien or mortgage belonging to and held by defendant. Plaintiff, not intending to release the lien of her first mortgage, nevertheless on May 28, 1929, executed a satisfaction thereof and accepted a new first mortgage note due three years from that date in the sum of $2,600, bearing the same rate of interest as the former note. She also accepted a so-called first mortgage securing the same, believing that the same was in fact an extension or renewal of the old mortgage. The satisfaction of the former mortgage was executed by her at the request of Peck & Fontaine and was recorded at the same time as the new mortgage. Plaintiff retained the original first mortgage, the assignment thereof, also the principal note. These papers she kept with the new note and mortgage in her safety deposit box. She had no actual knowledge of the Jansen mortgage. In the new mortgage, however, in the covenant respecting encumbrances, the following appears: That the mortgaged premises "are free from all encumbrances except one second mortgage of $750.00 now of record." No part of the principal sum of the original first mortgage note or of the renewal note has ever been paid. All of the same was due at the time of the commencement of this action and in addition thereto certain interest items and taxes. The court further found that delivery and recording of the "satisfaction of the first mortgage mentioned has in nowise prejudiced the rights and interest under the aforesaid second mortgage held by the defendant Emma D. Jansen, and that she has in no respect acted to her prejudice in the

matter by relying upon the satisfaction and discharge of the prior senior lien mentioned."

As conclusions of law the court determined:

"That the renewal mortgage in favor of plaintiff was actually a continuation or extension of her prior first mortgage and that the satisfaction delivered and recorded was not an extinguishment of the lien thereof, but the giving and recording of the new first mortgage was actually an extension and renewal thereof and did not give priority to the intervening mortgage held by the defendant Jansen. That the giving of said satisfaction of mortgage did not amount to a payment nor affect the priority of plaintiff's lien, and that the rights of innocent purchasers or subsequent holders are in nowise affected or prejudiced thereby, and that plaintiff's mortgage in said action sought to be foreclosed is prior and paramount to that of the defendant Emma D. Jansen. That plaintiff is entitled to statutory costs and disbursements," and ordered judgment accordingly.

That the findings of the court are amply sustained by the testimony cannot be questioned. As a matter of fact and as conceded in defendant's brief, "there is no dispute as to the facts in this case." It appears that plaintiff is a widow who has been accustomed to purchase mortgages from Peck & Fontaine. She has no knowledge or experience with respect of real estate titles, the examination of abstracts, or the sufficiency or efficacy of legal documents. She trusted Peck & Fontaine in respect of her dealings and signed whatever papers they told her she was to execute. Both Peck and Fontaine testified that they knew nothing about the Jansen mortgage until long after the new note and mortgage to plaintiff had been executed and delivered. It is freely admitted by them that someone in their office had "slipped up" when the first mortgage was satisfied of record and the new mortgage taken. There can be no doubt that the mortgage was mistakenly satisfied. Defendant did not testify. She relies upon the record title and asserts that plaintiff's mortgage is now an inferior lien and must give way to the $750 mortgage held by her. No effort was made in her behalf

to show that her rights or interests were in any way prejudiced by the making of the new $2,600 mortgage. But her counsel argue that Peck & Fontaine in their dealings with plaintiff were her agents and that their negligence was directly attributable to her. The testimony shows that in the early part of May the defendant Nickels had called up the office of Peck & Fontaine in respect of an extension of the $2,600 loan. On May 1, 1928, they wrote Mr. Nickels as follows:

"We are handing you herewith abstract of title to Lot 13, Block 1, Suburban Homes Co.'s Addition.

"The mortgage on this property comes due and payable May 28, 1929, and in accordance with our telephone conversation of this morning it is agreed that we extend the loan for three years, at a charge of 2½% commission plus the additional charges common to all loans; that you and your wife as well as the new purchasers shall sign the mortgage papers; that a copy of the opinion of the attorney who examines the abstract be furnished us as well as judgment searches in connection with you and Mrs. Nickels and the new purchasers."

In conformity with this letter, the new note and mortgage were drawn and the satisfaction of the first mortgage held by plaintiff secured. The expenses connected with this new arrangement were paid by Mr. Nickels. These included not only the recording of papers and extension of abstract but also the commission exacted by Peck & Fontaine. Plaintiff paid nothing. She simply accepted the new instruments at their full face value in the belief that she had a first mortgage loan, a renewal or extension of the one that had just matured.

█ It is obvious that plaintiff's original note was not paid by the subsequent note and mortgage. The evidence is conclusive that it was not, and the findings accord therewith. It has long been settled law in this state that "a promissory note given for an antecedent debt does not discharge the debt, unless expressly given and received as absolute payment; and the burden of proof is upon the party asserting the fact to show that it was so given and re-

ceived, the presumption being to the contrary." Geib v. Reynolds, 35 Minn. 331, 335, 28 N. W. 923, 924. State Bank v. Mutual Tel. Co. 123 Minn. 314, 317, 143 N. W. 912, Ann. Cas. 1915A, 1082; Way v. Mooers, 135 Minn. 339, 341, 160 N. W. 1014, L. R. A. 1918B, 559; Miller v. Farmers State Bank, 165 Minn. 339, 341, 206 N. W. 930; Farmers & M. State Bank v. Nummedahl, 166 Minn. 144, 147, 207 N. W. 313; Munson v. Bensel, 169 Minn. 434, 437, 211 N. W. 838; Hagen v. First State Bank, 180 Minn. 113, 115, 230 N. W. 267; Barsness v. Tiegen, 184 Minn. 188, 192, 238 N. W. 161, 76 A. L. R. 1317. This is also the rule where a third party joins in the execution of the new note. Mikolas v. Val Blatz Brg. Co. 147 Minn. 230, 233, 180 N. W. 109, and cases there cited. Taking a new mortgage is not payment of the old debt unless it was so intended. Geib v. Reynolds, 35 Minn. 331, 28 N. W. 923; Munson v. Bensel, 169 Minn. 434, 211 N. W. 838; Carity Motors, Inc. v. Eichten, 189 Minn. 310, 314, 249 N. W. 190; 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 6264. Many cases are cited and illustrations given in the section mentioned. And in 41 C. J. p. 582:

"Entering satisfaction of a mortgage and taking a new one, when designed by the parties to be merely a continuation of the first mortgage, and when the two acts are practically simultaneous or parts of the same transaction, is not an extinguishment of the mortgage, but a renewal thereof, and does not give priority to an intervening judgment or mortgage creditor of the mortgagor, especially where it is done in good faith, in ignorance of the existence of the intervening lien, and without any intention to release the lien of the mortgage." And see cases cited under notes 95, 96, and 97.

■ Plaintiff in ignorance of the existence of the intermediate mortgage held by appellant executed a satisfaction of her first mortgage. The question is whether or not in equity a mistake of this nature may be corrected and plaintiff afforded relief. In Emmert v. Thompson, 49 Minn. 386, 393, 52 N. W. 31, 32, 32 A. S. R. 566, the court said:

"It is a common thing for courts of equity to relieve parties who have by mistake discharged mortgages upon the record, and to fully protect them from the consequences of their acts, when such relief will not result prejudicially to third or innocent persons." To the same effect see Gerdine v. Menage, 41 Minn. 417, 43 N. W. 91.

In Bruse v. Nelson, 35 Iowa, 157, 160, we find a case very similar to this. The court in defining mistake as the same is used in a court of equity quotes from Story, Eq. Juris. § 110, note 1, to the effect that a mistake is "that result of ignorance of law or of fact, which has misled a person to commit that, which, if he had not been in error, he would not have done." There, as here, the court granted similar relief to what the trial court in the instant case granted plaintiff. We see no good reason for doubting the wisdom of that course. To the same effect is Peterson v. First Nat. Bank, 162 Minn. 369, 203 N. W. 53, 42 A. L. R. 1185; Kellogg Bros. Lbr. Co. v. Mularkey, 214 Wis. 537, 252 N. W. 596; Peoples Bank v. Trowbridge, 123 Neb. 312, 242 N. W. 647; American S. & L. Assn. v. Barry, 123 Neb. 523, 243 N. W. 628; Hardin v. Emmons, 24 Nev. 329, 53 P. 854.

In 4 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 6264, the author states:

"Equity will grant relief where a holder of a mortgage takes a new mortgage as a substitute for a former one and releases the latter in ignorance of the existence of an intervening lien."

■ Defendant contends that plaintiff was negligent in respect of satisfying her first mortgage and that such negligence is demonstrably apparent because of the clause contained in the new mortgage that the premises were free from all encumbrances "except one second mortgage of $750"; also that the abstract as continued had an entry showing defendant's mortgage. The court did not find negligence, nor was such finding requested; but, on the contrary, found that plaintiff had acted in good faith throughout and that she had no notice or knowledge of defendant's intervening mortgage. The evidence does not compel a finding of negligence on the part of plaintiff. Peck & Fontaine acted for the mortgagors in the negotiations. They requested the extension or renewal of the loan

and paid for the service rendered. Even if the question were open to discussion, upon this record and the findings made by the trial court, plaintiff should be accorded the relief sought by her and as granted by the court. In equity and good conscience defendant has no other or greater claim than the one she bargained for when she took her present mortgage. That contract then entered into by her still remains as it was. She bargained for and secured a second mortgage, inferior to plaintiff's first mortgage of $2,600. She has just that now. She is entitled to nothing more. It would be a sad reflection upon a court of equity if under the circumstances here appearing she were to prevail.

Order affirmed.