[No. 45534.   En Banc.   April 12, 1979.]

SOUTHWEST WASHINGTON PRODUCTION CREDIT ASSOCIATION, *Petitioner*, v. SEATTLE–FIRST NATIONAL BANK, *Respondent*.

*Armstrong, Vander Stoep & Remund,* by *J. A. Vander Stoep,* for petitioner.

*Davis, Wright, Todd, Riese & Jones,* by *Marvin L. Gray, Jr.,* for respondent.

*Lonny R. Suko* on behalf of Federal Intermediate Credit Bank of Spokane and Member Production Credit Associations, amicus curiae.

UTTER, C.J.—Southwest Washington Production Credit Association (PCA) brought a declaratory judgment action claiming its security interest in crops acquired by Symons Frozen Foods, Inc. (Symons), a food processor, had priority over a security interest of Seattle–First National Bank (Sea–First) in Symons' inventory. The trial court ruled in PCA's favor, which judgment was reversed by the Court of Appeals. We reverse the Court of Appeals and affirm the judgment of the trial court.

The issue in this case is whether petitioner PCA, by its actions, authorized the sale of farm products and thereby waived its security interest in them.

Petitioner PCA is a borrower–owned cooperative, much like a credit union, which is a branch of the federal credit system. It borrows its funds from the Federal Intermediate Credit Bank and in turn makes operating loans directly to farmers in its franchised territory.

In 1975, as in the prior 10 years, PCA made short–term loans to three Washington farmers to cover current operating expenses for crop production. The loans were 1–year notes payable on demand. PCA made the loans based on yearly budgets, prepared by the farmers, which anticipated the sale of crops. The farmers were scheduled to repay the loans as crops were sold.

As it had in the past, PCA in 1975 received and perfected a security interest in each of the crops and its proceeds.

The security agreements, which were standard forms, provided that the debtor farmers would "not permit any of the Collateral to be encumbered (other than Secured Party's security interest), sold, or removed . . . without first having obtained the written consent of the Secured Party." Petitioner PCA had never enforced the letter of this clause before, and did not do so in 1975. Rather, as always, PCA regularly met with the farmers, discussed their expected harvesting and sale of the crops, and payment of the loans out of sale proceeds.

In the summer of 1975, the farmers sold their crops to Symons without obtaining PCA's prior written authorization. Symons paid the farmers a portion of the sale price, which portion the farmers remitted to PCA. Symons thereafter became insolvent and never paid the balance due the farmers. The farmers then defaulted on their debts to PCA.

Respondent Seattle–First National Bank had a perfected security interest in Symons' inventory of frozen and processed food. PCA brought a declaratory judgment action, claiming its security interest in the crops acquired by Symons from the three farmers had priority over Sea–First's security interest in Symons' inventory. Sea–First acknowledged that if PCA still maintained an interest in the crops, this interest would be superior to the bank's. Its argument was, however, that by permitting the growers to sell to Symons, PCA had waived its security interest in the crops.

The trial court's ruling in PCA's favor was based upon its finding that PCA's consent to the crop sale was conditioned on its receipt of proceeds. The Court of Appeals reversed, ruling that PCA waived its security interest by its subsequent course of performance. *Southwest Washington Prod. Credit Ass'n v. Seattle–First Nat'l Bank,* 19 Wn. App. 397, 406, 577 P.2d 589 (1978). We reinstate the judgment of the trial court. .

Article 9 of the Uniform Commercial Code governs this case. *See* RCW 62A.9–101 *et seq.* That article treats specially farmers and agricultural transactions. *See* RCW

62A.9–109(3); 9–204(4)(a); 9–302(1)(c); 9–401(1)(a); 9–307(1); 9–312(2). *See generally* Clark, *The Agricultural Transaction: Equipment and Crop Financing,* 11 U.C.C.L.J. 15, 18–20 (1978).

Under 62A.9–307(1), a buyer in the ordinary course of business takes free of a security interest created by his or her seller except when that buyer is "a person buying farm products from a person engaged in farming operations . . ." Here, Symons purchased farm crops secured by PCA from three Washington farmers. Thus Symons and its creditor, respondent Sea–First, did not take free of PCA's security interest unless the interest was somehow defeated.

Under 62A.9–306(2), "a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof by the debtor *unless his action was authorized by the secured party in the security agreement or otherwise . . .*" (Italics ours.)

PCA here did not authorize the sale of crops in the security agreement. On the contrary, it prohibited sale without written consent. Sea–First argues, however, that PCA "otherwise" authorized the sale of crops and thereby waived its security interest. *See* 2 G. Gilmore, *Security Interests in Personal Property* 714–15 (1965).

██ The trial court here found as a matter of fact that "[p]laintiff's knowledge that the crops would be delivered to Symons and plaintiff's assent thereto were conditioned upon plaintiff's receipt of such proceeds." The depositions contain substantial evidence supporting the trial court's finding.

The record indicates that PCA consented to sale of crops on condition that "the growers . . . live up to the obligation that they have agreed to with P.C.A. whatever that repayment schedule may be." In fact, the PCA at trial explained its requirement of written authorization by saying that:

> This is a standard form that's written by our bank and had been approved by the bank's legal counsel. We arrive at a repayment schedule with the grower. As long as he performed within that prescribed agreement, we say he's

in compliance with the loan requirements, all of the loan requirements.

We believe this supports the finding that PCA consented to the sale of crops by its debtor–farmers on the condition that it received payment.

The UCC does not prevent a second party from attaching such a condition or limitation to its consent to sales of collateral by a debtor. *Farmers State Bank v. Edison Non–Stock Coop. Ass'n,* 190 Neb. 789, 793, 212 N.W.2d 625 (1973). A sale by the debtor in violation of those conditions is an unauthorized sale and the security interest, under § 9–306(2), continues in the collateral. *North Central Kansas Prod. Credit Ass'n v. Washington Sales Co., Inc.,* 223 Kan. 689, 693, 577 P.2d 35 (1978); *Baker Prod. Credit Ass'n v. Long Creek Meat Co.,* 266 Ore. 643, 654, 513 P.2d 1129 (1973). We conclude that PCA did not "otherwise" authorize the sale of crops, nor did it waive its security interest.

Sea–First relies on *Clovis Nat'l Bank v. Thomas,* 77 N.M. 554, 425 P.2d 726 (1967), and its progeny in support of its argument that PCA, in contemplating regular sale of the farm products, waived its security interest. However, neither the reasoning of that case nor of the considerable critical comment engendered by it are pertinent here. Once it has been determined that PCA in fact conditioned its consent to sell the collateral on continued receipt of the proceeds, circumstances under which an unconditional authorization of sale may take place need not be explored.

The judgment of the Court of Appeals is reversed and the trial court's declaratory judgment in petitioner PCA's favor is reinstated.

ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.