[No. 6607-0-III.   Division Three.   December 12, 1985.]

CENTURY CHEMICAL CORPORATION, *Appellant,* v.
COLUMBIA COUNTY GRAIN GROWERS, INC.,
*Respondent.*

*Michael V. Hubbard,* for appellant.

*Terry R. Nealey, G. Scott Marinella,* and *Woolson & Nealey,* for respondent.

GREEN, C.J.—Century Chemical Corporation appeals a summary judgment granted Columbia County Grain Growers, Inc. (Grain Growers). The issue is whether Century, having a security interest in the crops of its debtor, can follow those crops into the hands of the purchaser, Grain Growers, under RCW 62A.9–307(1) after the sale proceeds had been disbursed to a creditor with a prior perfected security interest.

Otto and Barbara Krouse are farmers in Columbia County. They obtained annual operating loans from Baker–Boyer National Bank in Walla Walla secured by their crops and farm equipment. On May 5, 1982, the Krouses purchased fertilizer valued at $24,007.71 from Century secured by their 1982 crop. Century perfected its security interest on May 7, 1982. At the time Century perfected its security interest, the bank already had a perfected security interest in the crop for over $150,000. The security agreement between Century and the Krouses provided that the crop would not be sold without Century's prior written consent.

In November 1982 the Krouses sold their 1982 crop to Grain Growers without Century's prior written consent. Grain Growers, unaware of Century's security interest, issued checks totaling $88,589.57 to Mr. Krouse and the bank as joint payees. When Mr. Krouse wrote a check to Century for $24,007.71, the bank dishonored it, applying the crop proceeds to its loans, leaving a balance in excess of $63,000.

Century brought this action in December 1982 against the Krouses, the bank and Grain Growers to recover its

unpaid fertilizer costs. Shortly thereafter the Krouses filed bankruptcy. Century moved for summary judgment against Grain Growers on the theory Grain Growers purchased Krouses' crops subject to Century's security interest and should have been named as a payee on the checks. Grain Growers moved for summary judgment against Century. Century's motion was denied and Grain Growers' motion was granted. Century appeals.

Century contends this case is governed by RCW 62A.9–307(1). That section provides:

> A buyer in ordinary course of business (subsection (9) of RCW 62A.1–201) *other than a person buying farm products* from a person engaged in farming operations takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

(Italics ours.) Thus, Century argues because the Krouses failed to get its prior written consent to sell as required by its security agreement, Century's security interest continued in the collateral despite the sale. RCW 62A.9–306. Since this sale involved farm products and is excepted from the effect of RCW 62A.9–307(1), Century claims it is entitled to look to the collateral itself for satisfaction. In the circumstances presented here, we disagree.

RCW 62A.9–307(1) was intended to protect the farm credit lender by allowing it to seek satisfaction from the buyer of farm products when the farmer sells his crop but fails to pay the lender or when the buyer fails to pay the farmer.[1] *Southwest Wash. Prod. Credit Ass'n v. Sea–First Nat'l Bank,* 92 Wn.2d 30, 593 P.2d 167 (1979); *see also* Geyer, *Farmers Who Sell Mortgaged Farm Products and Don't Tell; Buyers Who Buy Farm Products and Don't*

---

[1]The cases relied upon by Century *all* deal with a conflict between one creditor, generally the financing institution, and the buyer of the encumbered collateral. Century relies heavily on *Southwest Wash. Prod. Credit Ass'n v. Sea–First Nat'l Bank,* 92 Wn.2d 30, 593 P.2d 167 (1979) for its position, but it too dealt with the lending institution's right to satisfy its security interest in farm collateral purchased by a buyer who had failed to pay the debtor/farmer.

*Pay—An Electrifying Solution,* 34 Drake L. Rev. 429 (1984–1985). In those situations, the buyer may be forced to pay twice, once to the farmer who absconds with the proceeds, and again to the lender. However, it was not intended, as in this case, to allow Century, a junior secured creditor, to recover when the value of the collateral is insufficient to satisfy the loan owed the senior secured creditor, the bank.[2]

Here, there are two security interests. The collateral is insufficient to satisfy both. Resolution of this problem is governed by RCW 62A.9–312(5), which gives priority to the party that first perfected its security interest. Century does not contest the bank held the prior perfected interest. Since the proceeds were insufficient to satisfy the bank's interest, adding Century as a payee on the checks would not have given it a legal right to any of the proceeds.

Century's only recourse is against Krouse, through the bankruptcy. As noted in an article by Keith G. Meyer enti-

---

[2]The application of RCW 62A.9–307(1) could potentially arise in a situation where the sale of the collateral not only satisfied the senior secured party's interest, but where there were additional proceeds available to the junior secured party. It has the potential for producing harsh results and is an issue which is ripe for legislative review. This section, taken from the Uniform Commercial Code, has been the subject of vigorous litigation since its enactment and the subject of much criticism by courts and commentators alike. *United States v. Central Livestock Ass'n,* 349 F. Supp. 1033 (D.N.D. 1972); *Planters Prod. Credit Ass'n v. Bowles,* 256 Ark. 1063, 511 S.W.2d 645 (1974); *Clovis Nat'l Bank v. Thomas,* 77 N.M. 554, 425 P.2d 726 (1967); *Central Wash. Prod. Credit Ass'n v. Baker,* 11 Wn. App. 17, 521 P.2d 226 (1974); Wechsler, *Rights and Remedies of the Security Party After an Unauthorized Transfer of Collateral: A Proposal for Balancing Competing Claims in Repossession, Resale, Proceeds, and Conversion Cases,* 32 Buffalo L. Rev. 373 (1983). The farm products exception has been eliminated in California and has been the subject of proposed federal legislation. Cal. Com. Code § 9307(1) (West 1985); S. 2190, 98th Cong., 1st Sess. (1983); H.R. 3296, 98th Cong., 1st Sess. (1983). Many states have attempted to prevent the problem by requiring the secured party to give notice to the buyer, by obtaining a statement from the seller of existing liens, providing criminal penalties for sellers who falsify information, exemptions for selected buyers, central filing of security interests, and shorter statutes of limitation. Del. Code Ann. tit. 6, § 9–307(2) (Supp. 1984); Ill. Rev. Stat. ch. 26, §§ 9–307.1, 9–307.2 (Supp. 1985); Ind. Code § 26–1–9–307 (Supp. 1985); Neb. Rev. Stat. § 9–307(4) (Supp. 1984); N.D. Cent. Code § 41–09–28(4) (Supp. 1985); Ga. Code Ann. § 11–9–307(3) (1981).

tled *"Crops" as Collateral for an Article 9 Security Interest and Related Problems,* 15 U.C.C. L.J. 3, 41 (1982):

There is no doubt that the supplier of production materials such as seed, herbicides, and fertilizer is in a difficult position today when a lender has filed a blanket financing statement covering all of the collateral of the farmer. The supplier of production materials does, however, have some options. It can require cash up front, obtain an accommodation party, or seek a subordination agreement with the lender or get a standby letter of credit. If the lender is not willing to provide the money, it should tell the production material supplier something. If the supplier still wants to go ahead, it should obtain a perfected security interest in the debtor's collateral even if it is already subject to a security interest. The supplier must hope for no bankruptcy or hope that the collateral is worth more than the first secured party's debt upon bankruptcy.

Some states, such as Iowa and Nebraska, have enacted statutory lien laws giving the supplier of agricultural products enforceable liens on parity with the prior perfected security interest of the lending institution. Salsbery & Juhl, *Chapter 570A Crop and Livestock Lien Law: A Panacea or Pandora's Box,* 34 Drake L. Rev. 361 (1984–1985). However, the Legislature has not seen fit to enact such legislation in this state.

Affirmed.

MUNSON and THOMPSON, JJ., concur.

Review denied by Supreme Court February 21, 1986.