# PRODUCTION CREDIT ASSOCIATION OF BARABOO, Plaintiff-Respondent,

### v.

# THE PILLSBURY COMPANY, Defendant-Appellant.

Court of Appeals

*No. 84–2466. Submitted on briefs March 6, 1986.—Decided June 5, 1986.*

(Also reported in 392 N.W.2d 445.)

For the defendant-appellant the cause was submitted on the brief of *Gregory S. Bonney* and *Johns, Flaherty & Gillette, S.C.* of Prairie du Chien.

For the plaintiff-respondent the cause was submitted on the brief of *Wrede H. Smith, Steven J. Kirschner* and *Christopher D. Daniels* and *Ross & Stevens, S.C.* of Madison.

Before Gartzke, P.J., Dykman, J., and Eich, J.

GARTZKE, P.J.   The Pillsbury Company appeals from a $39,263.23 judgment awarded Production Credit Association of Baraboo for Pillsbury's conversion of harvested crops and proceeds in which PCA claimed a security interest. The primary issues are whether PCA's security agreement and financing statement sufficiently described the collateral and whether PCA unconditionally authorized the debtor to sell the collateral free of lien. We conclude that the description was adequate, that PCA authorized sales of the collateral and that PCA's attempt to limit authorized sales to those in which the proceeds are paid to

PCA is ineffective. We therefore conclude that the sale to Pillsbury was unconditionally authorized and PCA's security interest did not survive the sale. We reverse the judgment.

PCA made loans to Gordon and Joan Poad for farming operations. To secure the loans, the Poads and PCA entered a security agreement. PCA took security interests in all crops growing or to be grown on specifically described property in Richland county and in the products of those crops, and in "[a]ll harvested and processed crops not covered under other sections of this Agreement." A financing statement covering "all livestock feed & grain" was properly filed.

The security agreement authorized sales of "all crops" by the Poads, provided that the "[p]roceeds from the sale of crops shall be paid to PCA in the amount of repayment provisions in effect at the time." The repayment provisions required that the first $131,200 the Poads received from corn and soybean sales be paid to PCA.

Pillsbury bought part of the Poads' 1981 corn and soybean crop after it was harvested. Neither the security agreement nor the financing statement described the land on which the corn and soybeans were grown. Gordon Poad marketed the crops through his grain dealership, P & P Grain Farms. Pillsbury relied on Poad's representation that the crops were lienfree and did not inquire into their source. Pillsbury paid P & P Grain Farms $39,263.23. Poad deposited the check in his individual account and paid no part of it to PCA. PCA brought this action when the Poads defaulted and PCA learned of their sales to Pillsbury.

Because the land on which the harvested corn and soybeans were grown was not described in the security

agreement or financing statement, Pillsbury argues that PCA's security interest did not attach to the crops Pillsbury purchased. A security interest is unenforceable against a third party unless the collateral is in the possession of the secured party or the debtor has signed a security agreement containing a description of the collateral. Section 409.203(1)(a), Stats. If the collateral is "crops growing or to be grown," the security agreement and financing statement must contain a description of the land concerned. Sections 409.203(1)(a) and 409.402(1)(b).

The need for a real estate description when the collateral includes harvested crops turns on interpretation of secs. 409.203 and 409.402, Stats. Statutory interpretation is a question of law which we decide without deference to the trial court's opinion. *State v. Denter,* 121 Wis. 2d 118, 122, 357 N.W.2d 555, 557 (1984).

Until 1974, a real estate description was necessary to make a security interest enforceable against third parties whenever the security interest covered "crops." *See* sec. 409.203(1)(b), Stats. 1971.[1] In 1973, the legislature adopted the present sec. 409.203, which provides that a description of the land concerned is necessary when the collateral is "crops growing or to be grown." Section 24, ch. 215, Laws of 1973, eff. July 1, 1974. The effect of the statutory change is that a real estate description is no longer required when the collateral is harvested crops. *See* Meyer, *"Crops" as Collateral for an*

---

[1] Section 409.203(1), Stats. 1971, provided in material part: "[A] security interest is not enforceable against the debtor or third parties unless: . . . (b) The debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops . . ., a description of the land concerned."

*Article 9 Security Interest and Related Problems,* 15 U.C.C. L.J. 3, 18 (1982) (this is the appropriate inference from the same change in the Uniform Commercial Code). Since Pillsbury purchased harvested crops, the lack of a description of the land on which the crops were grown does not affect PCA's security interest.

The "grain" description in the financing statement was also sufficient. The purpose of the description of collateral in a financing statement is to give a third party notice that further inquiry is in order. *In re Turnage,* 493 F.2d 505, 506 (5th Cir. 1974). The financing statement covered "all livestock feed & grain." Grain includes at least corn. The reference to "grain" put third parties on notice of PCA's security interest in harvested crops.

Pillsbury nevertheless argues that it purchased free of PCA's security interest. A buyer in the ordinary course of business generally cuts off the security interest in the collateral sold, but this rule does not apply to a person who buys farm products from a person engaged in farming operations. Section 409.307(1), Stats. That Gordon Poad sold the farm products as a grain dealer is immaterial. Poad was engaged in farming operations.

If, however, a sale of farm products by a person engaged in farming operations has been authorized pursuant to sec. 409.306(2), Stats., the buyer takes free of the security interest. *First Nat. Bank v. Iowa Beef Processors,* 626 F.2d 764, 767 (10th Cir. 1980). Section 409.306(2) provides:

> Except where this chapter otherwise provides, a security interest continues in collateral notwith-

standing sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

Since the security agreement authorized the Poads' sale of "all crops," Pillsbury argues that PCA cannot maintain this action. Although the security agreement expressly authorized crop sales, it conditioned that authorization on the Poads' payment of the proceeds to PCA. It is undisputed that Gordon Poad's sale to Pillsbury is covered by the "first $131,200.00" repayment provision. Nothing in sec. 409.203(2), Stats., prohibits a conditional authorization.

We therefore agree with the view that by conditioning the authorization, a secured party may preserve its security interest even after an authorized sale. *First Nat. Bank,* 626 F.2d at 767–68; *Anon, Inc. v. Farmers Production Credit,* 446 N.E.2d 656, 661 (Ind. Ct. App. 1983); *N. Cent. Kan. Prod. Cred. Ass'n v. Wash. Sales Co.,* 577 P.2d 35, 39 (Kan. 1978); *Southwest Wash. Prod. Credit v. Seattle-First Nat'l Bank,* 593 P.2d 167, 169 (Wash. 1979). "It is generally held that where conditions to a sale are imposed by the secured party, a sale by the debtor in violation of the conditions is unauthorized, and the security interest continues." *Anon, Inc.,* 446 N.E.2d at 661.

But if the condition imposed on an authorization to sell is ineffective, the authorization is unconditional and the security interest does not survive the sale. *First Nat. Bank,* 626 F.2d at 769; *Anon, Inc.,* 446 N.E.2d at 661.

248

The majority view is that a condition imposed on an authorization to sell is ineffective, unless performance of the condition is within the buyer's control. Thus, when the creditor authorized the debtor to sell, provided that the debtor remitted proceeds to a certain bank, *First Nat. Bank,* 626 F.2d at 769, held the condition was ineffective. *Anon, Inc.,* 446 N.E.2d at 662, held that an authorization to sell was ineffectively conditioned on the debtor remitting the proceeds. *See also Lisbon Bank and Trust Company v. Murray,* 206 N.W.2d 96, 99 (Iowa 1973) (authorization to sell ineffectively conditioned on debtor's accounting for the proceeds); *N. Cent. Kan. Prod. Cred. Ass'n,* 577 P.2d at 39, 41–42 (authorization to sell ineffectively conditioned by requiring debtor to apply proceeds to debt, effectively conditioned by requiring payment jointly to debtor and creditor). *Contra Southwest Wash. Prod. Credit,* 593 P.2d at 169 (conditional authorization that creditor receive payments effective).

The majority view that a condition is ineffective unless the buyer can control performance of the condition is the better rule. Under that rule, the buyer who inquires regarding authorization to sell can structure the sale to comply with the condition and avoid taking subject to the security interest. Under the minority rule, the buyer who inquires and learns of a condition not within the buyer's control must risk taking subject to the security interest or refuse to buy. We ought not adopt a rule which creates an unacceptable and unnecessary risk.

We conclude that PCA's condition that the Poads remit the first $131,200 received from corn and soy-

bean sales was ineffective. The sale was therefore un-conditionally authorized and Pillsbury purchased the Poads' crops free and clear of PCA's security interest.

*By the Court.*—Judgment reversed.