Roger WANGEN, Respondent,

v.

SWANSON MEATS, INC., Appellant.

No. C4–95–622.

Court of Appeals of Minnesota.

Nov. 28, 1995.

Review Denied Jan. 25, 1996.

Kay N. Hunt, J. Christopher Cuneo, Lommen & Nelson, Minneapolis, for Respondent.

Patrick J. O'Meara, Cupertino, CA, for Appellant.

Considered and decided by NORTON, P.J., and RANDALL and DAVIES, JJ.

## OPINION

NORTON, Judge.

Swanson Meats, Inc., seeks review of a court trial verdict ordering it to pay $71,945.19 in damages to respondent Roger Wangen. Because we hold that Swanson's purchase of AVFS inventory violated a valid security interest held by Wangen, we affirm.

## FACTS

In June 1991, Apple Valley Food Services, Inc. (AVFS), granted a security interest to Roger M. Wangen (Wangen) in all of its property including its inventory.[1] This security interest was granted to Wangen as collateral for a $220,000 note and a $40,000 note that AVFS guaranteed in the name of the Apple Valley Food Service, Inc. Employee Stock Ownership Plan and Trust (ESOP). This security interest was executed in a U.C.C. Financing Statement that was filed with the Secretary of State's Office on June 17, 1991. To date, this Financing Statement has never been revoked or amended.

Later in 1991, the ESOP refinanced its loan with Wangen by borrowing money from Park National Bank (PNB). In exchange for cash payment, Wangen agreed to give ESOP credit in excess of what he was actually paid. The remainder of the loan was guaranteed by AVFS in the same manner as the prior agreement.[2]

AVFS then opened a revolving line of credit with PNB secured by AVFS assets, including inventory. PNB filed a U.C.C.–1 Financing Statement with respect to this agreement.

By December 1993, AVFS and ESOP were beginning to have serious problems meeting their payment obligations. As a result, Wan-

gen notified AVFS that he was going to foreclose on the collateral that was outlined in the Financing Statement. Later that month, AVFS wound up its operations and sold its inventory to Swanson Meats, Inc. (Swanson), for $95,719.86; Swanson in turn sold it to R & R Specialty Foods (R & R). Swanson and Wangen have stipulated that the inventory was worth $71,945.19.

AVFS used the proceeds of the sale to pay off a portion of the debt owed to PNB on the revolving line of credit. PNB, which knew of the transaction, authorized the sale to Swanson with full knowledge of Wangen's interest. Wangen never gave authorization for the sale of AVFS inventory to Swanson. There was evidence that Wangen had allowed PNB to establish itself as the senior creditor with respect to the ESOP loan; however, there is no evidence that Wangen subordinated his interest with respect to any obligation owed to him by AVFS.

Based on these facts, the trial court ruled in favor of Wangen awarding him damages in an amount equal to the value of the inventory Swanson purchased from AVFS. Swanson now challenges the court's findings of fact and conclusions of law, arguing that (1) Wangen cannot assert a claim against Swanson because his security interest has no value and; (2) that there was no basis to conclude that the law of conversion allows for the ordered damages.

## ISSUE

When a debtor makes an unauthorized sale of collateral, does the secured party have a claim of conversion against the purchaser who subsequently sold the collateral and failed to satisfy the security interest?

## ANALYSIS

■ This court may not set aside a district court's findings of fact unless clearly errone-

---

1. The agreement gave Wangen a security interest in: "All of [AVFS's] inventory, documents evidencing inventory, customer lists, chattel paper, general intangibles, accounts and contract rights, now or hereafter existing, and all of [AVFS's] fixtures, equipment, motor vehicles, now owned of hereafter acquired, wheresoever the same may be situated, together with all accessories, attachments, substitutions, replacements, renewals, ad-

ditions, alterations, betterments, and repairs made to or upon such property."

2. Wangen agreed to subordinate his security interest to PNB's with respect to the ESOP loan, however, Wangen never subordinated his position with respect to AVFS's obligations.

ous. Minn.R.Civ.P. 52.01. "The findings must be manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Tonka Tours, Inc. v. Chadima,* 372 N.W.2d 723, 726 (Minn. 1985).

■ The determinative issue is whether the trial court correctly concluded that Wangen's position as a creditor of AVFS allowed him to bring this cause of action against Swanson. Analysis of this issue involves the application of Minn.Stat. § 336.9–306(2) (1990), which provides:

> Except where this article otherwise provides, *a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party* in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor.

(Emphasis added.) The comment for this particular section states that:

> In most cases *when a debtor makes an unauthorized disposition of collateral, the security interest, under prior law and under this Article, continues in the original collateral in the hands of the purchaser or other transferee.* That is to say, since the transferee takes subject to the security interest, the secured party may repossess the collateral from him or in an appropriate case maintain an action for conversion. Subsection (2) codifies this rule. * * * *If the disposition was not authorized by the secured party, or was authorized by the secured party subject to the secured party's security interest, the transferee will not acquire the collateral free and clear of the security interest.*

Minn.Stat.Ann. § 336.9–306, cmt. 3 (emphasis added); *see also Farmers State Bank v. Easton Farmers Elevator,* 457 N.W.2d 763 (Minn.App.1990) (recognizing that secured party may maintain claim against debtor, or may maintain claim against purchaser/transferor for repossession of collateral or for conversion), *review denied* (Minn. Sept. 20, 1990).

■ Conversion is defined as the "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Restatement (Second) of Torts* § 222A(1) (1965).

Swanson argues that Wangen's position with respect to the AVFS inventory was junior to that of PNB, therefore making PNB's authorization of the sale controlling. We find no support for this in the record. Swanson cites *Carity Motors v. Eichten,* 189 Minn. 310, 249 N.W. 190 (1933); *Batey Land & Livestock Co. v. Nixon,* 172 Mont. 99, 560 P.2d 1334, 1337 (1977); and *Century Chem. Corp. v. Columbia County Grain Growers, Inc.,* 42 Wash.App. 293, 710 P.2d 816, 818 (1985), *review denied* (Wash. Feb. 21, 1986), in support of its argument. But, none of these cases are applicable, because they involve fact situations in which parties in Wangen's position had junior security interests. The record contains no basis for this theory. Further, *Carity Motors* was decided in 1933, well before Minnesota adopted the U.C.C.

The record shows that AVFS had two lines of credit secured by the same property. The first line of credit was the ESOP loan that AVFS guaranteed; the second was the revolving line of credit obtained from PNB. This case concerns AVFS's sale of its inventory to Swanson, the proceeds of which went toward satisfying the second line of credit. The record indicates that PNB, Swanson, AVFS, as well as ESOP, all had clear knowledge of Wangen's position with respect to the inventory. AVFS, nevertheless, failed to get authorization from Wangen for the sale, thereby giving Wangen a claim against Swanson. *See Erlandson Imp. v. First State Bank,* 400 N.W.2d 421, 426–27 (Minn.App. 1987) (holding secured party had conversion claim against implement dealers, because security interest continued into dealers' hands when debtor made unauthorized transfer of collateral to them to purchase other equipment). The court did not err when it determined that Swanson's purchase of the AVFS inventory violated Wangen's security interest.

**4**

■ We next turn to whether the trial court erred in awarding damages for conversion. AVFS granted a security interest in its inventory to Wangen to secure a $220,000 promissory note and a $40,000 promissory note given to Wangen by ESOP. AVFS then sold its inventory to Swanson for $95,719.86 without Wangen's authorization. Swanson then sold the inventory and retained the proceeds in violation of Wangen's security interest; this constituted a conversion. *See Chrysler Corp. v. Adamatic, Inc.*, 59 Wis.2d 219, 208 N.W.2d 97, 106–108 (1973) (holding that a buyer is required to return collateral to the secured creditor or pay the worth of the property), *overruled on other grounds by Daniel v. Bank of Hayward,* 144 Wis.2d 931, 425 N.W.2d 416 (1988). The parties here have agreed that the inventory had a value of $71,945.19. The court did not err when it found conversion and ruled in favor of Wangen for that amount.

### DECISION

Because Swanson violated Wangen's security interest in AVFS's property, we hold that the district court did not abuse its discretion when it concluded that Wangen was entitled to conversion damages for the value of the secured property. This holding, though binding with respect to the current litigants, has no preclusive effect on any future litigation between Swanson Meats, Inc., and PNB.

**Affirmed.**