INVESTORS SYNDICATE v. WILLIAM J. HORRIGAN AND ANOTHER.[1]

August 5, 1932.

No. 28,932.

[1]Reported in 244 N. W. 65.

600

*Tifft & Youngdahl,* for appellants.

*R. W. Peterson,* for respondent.

DIBELL, J.

Action of unlawful detainer in the municipal court of Minneapolis tried without a jury. There was judgment of restitution. The defendants, husband and wife, appeal.

On December 1, 1923, the Midwest Company, the owner of a 20-apartment building in Minneapolis, mortgaged it to the plaintiff, Investors Syndicate, for $55,000. This mortgage was the first lien upon the property.

On January 10, 1924, the Midwest Company sold the property on contract to Newton. This made Newton the equitable owner. The Midwest still held the legal title, but only as security for Newton's performance of the terms of the contract. If performed he would be entitled to a deed subject to the mortgage.

On February 25, 1924, the Midwest Company sold to Swenson by warranty deed and assigned its interest as vendor in the contract with Newton. Swenson by this transaction became the legal owner holding the title as security for the performance of the Newton contract, and Newton remained the equitable owner.

On October 5, 1925, Newton assigned his contract to the defendant William J. Horrigan, who took possession and occupied the property. Horrigan was then the equitable owner, but his title was subject to the rights acquired by Swenson, who was the owner of the legal title, and, like all other interests, subject to the Investors Syndicate mortgage of December 1, 1923, which was first of all.

On August 2, 1927, the plaintiff, Investors Syndicate, commenced the foreclosure of its mortgage under the power. On September 22, 1927, the property was sold on the foreclosure for $49,314.12. This

was the full amount due. The plaintiff, Investors Syndicate, purchased and received the usual sheriff's certificate. The period of redemption would expire at the end of a year; and, there being none, the syndicate would be the owner in fee.

On February 28, 1928, defendant Horrigan paid to Swenson $1,750, this being the balance due on the contract, and Swenson conveyed to him. This made Horrigan the owner of the property subject to the foreclosure sale of September 22, 1927. As far as appears, there was no right of redemption except in Horrigan as owner; that is, there were no liens under which redemption could be made.

Negotiations were had between Horrigan and the Investors Syndicate relative to the property. As a result on May 14, 1928, an option contract was entered into between the two. It contemplated that after the title had become vested in the Investors Syndicate by lapse of the period of redemption, if it did become so vested, a contract for deed would be given Horrigan whereby he might acquire the title to the land. Such a contract was executed on October 29, 1928. The defendant defaulted on the contract in 1931, and the plaintiff terminated the contract pursuant to the provisions of G. S. 1923, § 9576, as amended, 2 Mason, 1927, id. and reinvested itself with title. The plaintiff then commenced this action of unlawful detainer.

The question is whether the giving of the option and contract for deed in 1928, or whatever occurred in connection with the negotiations, extended the mortgage, or amounted to an abandonment of the foreclosure, or waived any right acquired by it; or, in another way, whether there was an equitable mortgage or the ordinary contract for a deed with the vendee's interest terminable on notice.

The option required the payment of $3,520.91, of which $2,170.91 was to be in cash, $450 on June 22, 1928, $450 on July 22, 1928, and $450 on or before August 22, 1928, and the conveyance by bill of sale of all the personal property in the apartment building. The amounts stated were paid. The bill of sale was executed and delivered. The property covered by it was found by the court to be

worth from $4,000 to $10,000. In addition to the foregoing payments, the defendant was to pay on September 22, 1928, the sum of $1,000.36, making in all $4,521.27, which was paid upon the contract for deed. If the defendant did not take the benefit of the option, the payments were to be returned to him and whatever the company had received under the bill of sale. The option contained this statement:

"Provided, however, and it is expressly understood, that the said optionor now merely holds a sheriff's certificate of sale, dated September 22nd, 1927, to the said real estate, issued to it as purchaser at its mortgage foreclosure sale thereof, under which it will not be entitled to possession of the said real estate until after the expiration of the statutory period of redemption, and has received a bill of sale to the said personal property as aforesaid; that the said optionor does not represent or covenant that it is well seized in fee of or has or will convey good title to, or has or will deliver possession of the said real estate and personal property, or any part thereof; and that in event of a redemption of the said real estate by the fee owner thereof, or the filing of notice of intention to redeem and actual redemption by any bona fide encumbrancer thereof, within the time and in accordance with the statutes in such case made and provided, this option shall be null and void, and the said optionor shall be absolutely released therefrom and all liability thereunder, and the said option payments without interest shall be refunded to the said optionee, and the said bill of sale shall be returned to the said optionee without any liability on the part of the said optionor for the condition, use or return of the said personal property or any part thereof, or otherwise."

The Investors Syndicate by the option of May 14, 1928, and the contract for which it provided, was to get in money at the close of September 22, 1928, if there was no redemption and if the contract was carried out, the amount to which it would have been entitled at the close of the period of redemption, plus taxes. In addition it was to get the furnishings included in the bill of sale valued by

the court at from $4,000 to $10,000. It required $52,766.11 to redeem at the close of the redemption year.

There is a conflict in the testimony. The officers of the syndicate claim that there was never a talk about waiving any right under the mortgage or extending or continuing it or the debt; but, to the contrary, the talk had was that nothing of the kind was to be done; and that it was clearly understood that the contract for deed, made on October 29, 1928, pursuant to the option, represented an actual transaction of the same validity as if it had been initiated then.

The character of the right acquired by the purchase at a foreclosure sale during the redemption period is an anomalous one. It is a title to property. The plaintiff could have conveyed by deed whatever it had acquired by its purchase. The relation between the plaintiff and the defendant was not such that they could not deal with one another relative to the property and change their rights in it. The court would be watchful of anything which tended to eliminate the defendant's right of redemption. The agreement here did not. The defendant did not agree not to redeem; and if he did redeem, all of the moneys which he had paid in contemplation of a contract for deed were to be repaid him, and he was to have back the personal property in the apartment. The plaintiff might have made a like option to someone disconnected with the title and might have performed such a contract without offense.

A way of looking at the transaction, and the one adopted by the court, is that the plaintiff and the defendant undertook that if there was no redemption the plaintiff would give the defendant a contract for a deed at a specific price on payments of $450 per month, except the tax months of May and October, and that the contract would mature on the 22nd day of December, 1935, when the whole sum remaining unpaid should be paid in full, interest to be computed at six per cent and first applied in payment of interest due. The plaintiff was to have as a part of the consideration of this contract the furniture found to be worth from $4,000 to $10,000. This was not credited on the purchase price fixed by the contract, but in effect was paid by the defendant if he executed the contract.

On the face of the papers the parties made a contract of sale, putting the equitable title in Horrigan and leaving in the syndicate the legal title which was perfected upon the failure to redeem on September 22, 1928. The legal title stood in the syndicate as security for the contract of October 29, 1928, and for nothing else. The mortgage and mortgage debt were gone.

There was oral evidence. It was conflicting. That of the plaintiff was to the effect that anything like a continuance of the mortgage or the waiver of the foreclosure or rights accruing under it was negatived. The testimony in behalf of Horrigan was that it was intended that the transaction represented by the contract for deed was a continuance of the old security, that the foreclosure was waived, the debt remained, and the contract of October 29, 1928, was in effect a mortgage securing it. There might be such a result, it all depending upon the facts. Sanderson v. Engel, 182 Minn. 256, 234 N. W. 450; Westberg v. Wilson, 185 Minn. 307, 241 N. W. 315; 4 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 6150-6156.

The trial court finds:

"That the parties did not intend to waive or abandon the mortgage foreclosure proceedings hereinbefore mentioned by reason of their negotiations during the period of redemption, and that it was their intention that fee title should ripen in plaintiff in the event no redemption was made from the foreclosure; and that by reason of said mortgage foreclosure, plaintiff acquired fee title to said premises on September 23, 1928."

The evidence sustains this finding, and it must be accepted. It seems a proper one; and perhaps none other could be upheld.

The defendants rely much on Oertel v. Pierce, 116 Minn. 266, 133 N. W. 797, Ann. Cas. 1913A, 854; and to a lesser extent on Minnesota B. & L. Assn. v. Closs, 182 Minn. 452, 234 N. W. 872. Their contention is forcibly urged. We cannot accept the result for which they contend. In the Oertel case, 116 Minn. 266, 133 N. W. 797, Ann. Cas. 1913A, 854, the findings were for the mortgagor. Here, but not there, the understanding was that title, if it ripened in the syndicate, should be sold with payments substantially as on

the former mortgage. The rate of interest of the contract for deed was six per cent. The mortgage seems to have been seven per cent. The plaintiff as a consideration got several thousand dollars worth of personal property used in connection with the apartment.

If Mr. Horrigan thought it well, in view of conditions as they were in 1928, to take this way of getting title, the parties might agree to the arrangement made without a resultant waiver or abandonment of rights by the company. It might have seemed that the property would work itself out. Horrigan might have redeemed on September 22, 1928, and taken back the sums of money which he had paid and the personal property. If he chose to make a new contract for purchase for a net of $50,400, in effect giving his personal property of $4,000 to $10,000 for the privilege, which again would be his if he performed, he might do so. The syndicate may have driven a harsh bargain. Horrigan is a lawyer and knew the legal phases of the contract and doubtless was familiar with financial conditions in 1928.

■ In view of what is claimed as to the nature of the contract for deed of October 29, 1928, we quote again from the option:

"That the foregoing conveyance by bill of sale of the said personal property by the said optionee to the said optionor is not made or accepted by the parties hereto as evidence of or security for any indebtedness whatsoever, but, on the contrary, is and is intended to be an absolute sale thereof; that this option is not given or accepted by the parties hereto as evidence of or security for any indebtedness whatsoever, but, on the contrary, is and is intended to be an option only in favor of the said optionee to purchase the said real estate and personal property; that this option is not intended to be and shall not be construed as an earnest money contract or a contract of purchase and sale; that this option is not given or accepted by the parties hereto as an extension of the period of redemption from the said mortgage foreclosure sale, or a waiver of any rights, title or interest acquired by the said optionor at the said sale."

These words are not controlling. They are to be considered in connection with other parts of the transaction and with the facts attending. We must go to the transaction itself to find its nature. The words of the option would not prevent a finding that the contract for a deed was a mortgage or a waiver of the foreclosure or even in itself a mortgage if the facts were such as to justify it. See 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 6150, and cases cited. Here a finding of the contract as controlling the rights of the parties is sustained. See Westberg v. Wilson, 185 Minn. 307, 241 N. W. 315.

Judgment affirmed.