LILLIAN M. LEE AND OTHERS v. CONSTRUCTION SERVICE, INC. AND ANOTHER.[1]

June 13, 1947.

No. 34,434.

[1]Reported in 28 N. W. (2d) 69.

150

*Harroun, Anderson & Poseley* and *Donald M. Wakefield,* for appellants.

*Freeman & King,* for respondents.

Magney, Justice.

Appeal from an order overruling the separate demurrers of defendants to the complaint, the questions involved being certified as important and doubtful.

The complaint and the amended and supplemental complaint in question contain the following allegations: Elmer Theodore Lee died

intestate in the latter part of 1944. He left surviving him Lillian M. Lee, his widow, and four children, Merlin Jerome, Elmer Theodore, Jr., Anabelle Carolyn, and Gwendolyn Ingrid, the latter two being minors, the plaintiffs herein. At the time of his death, Lee was the owner of property described as 2224 Emerson avenue south in Minneapolis, subject to a $6,500 mortgage owned by one G. B. Mogg. After the death of her husband, Mrs. Lee consulted H. W. Mogg, an attorney, the husband of G. B. Mogg, the mortgagee, with reference to the probating of the estate of her deceased husband. Mogg advised her that instead of probating her husband's estate she could procure the same title by permitting him to foreclose his wife's mortgage, and thereupon he and his wife in turn, upon payment of the amount then due, would satisfy the same. Mogg took Mrs. Lee to the office of attorney James E. Carr, who was retained to foreclose the mortgage and who was fully advised as to the reason for the foreclosure. She was advised by both attorneys that the proposed proceeding was a satisfactory one and would be beneficial to her and less expensive than probating her husband's estate. She then permitted Mogg and Carr to proceed with the foreclosure. She relied upon the advice given her. Upon the completion of the foreclosure proceeding, Mrs. Lee was promised and advised that the title would be as good as if her husband's estate had been probated. A mechanic's lien had been filed against the property on April 21, 1945, by defendant H. J. Wedding, doing business as the American Electric Company. On January 31, 1946, an action was commenced by the lienholder to foreclose this lien. Mrs. Lee again consulted H. W. Mogg, who advised her that she had a good defense and that he would secure an attorney for her who would file an answer and defend the action. Mogg retained attorney Burdette W. Bergman for that purpose. An answer was filed, but the action has not yet come up for trial. Mrs. Lee relied exclusively upon these attorneys to conduct the proceedings, and she personally paid no further attention to them. Foreclosure proceedings were commenced on May 23, 1945, and on July 30, 1945, a sheriff's certificate was issued to G. B. Mogg, the holder of the mortgage lien. During the year for redemption,

attorney James E. Carr died. Shortly before the period of redemption was about to expire, the holder of the mechanic's lien executed an assignment of his interest to the defendant Construction Service, Inc., a corporation, which assignment was filed July 29, 1946, the day before the expiration of the time for redemption. On the same date, the assignee of the lien filed its notice of intention to redeem from the mortgage sale. It paid the sheriff of Hennepin county $7,422.56, for which it received a sheriff's deed to the property.

It is further alleged that on June 17, 1946, Mrs. Lee left for California, where she remained until her return to Minneapolis on August 2. During the time she was absent, she had no knowledge of the time when the period of redemption would expire, or of the assignment of the mechanic's lien, or of an intention to redeem by Construction Service, Inc., and she was not advised of any of the particulars by her attorneys or anyone else.

It is also alleged that on July 30, 1946, the premises were worth conservatively $40,000. Mrs. Lee and her children had the money on July 29, 1946, and if they had been advised by their attorneys, they would have redeemed from the mortgage sale. They have the money now to repay Construction Service, Inc. and to save it harmless. Construction Service, Inc. and E. R. Anderson, Anthony B. Harroun, Wilfred B. Poseley, and Robert H. Allen, officers, agents, and directors thereof, and defendant H. J. Wedding, the mechanic's lienholder, were fully aware of the situation and knew or should have known that a mistake and inadvertence had occurred. They also knew or should have known that the attorney who foreclosed the mortgage had died during the period of redemption; that Mrs. Lee was a widow and inexperienced in business affairs; and that attorney H. W. Mogg was more of a real estate man than an attorney. And, with full knowledge of all the facts and acting in and for themselves and Wedding, they entered into a scheme, trick, or conspiracy for the sole purpose of defrauding plaintiffs of their property. A serious mistake of both law and fact has occurred, for which plaintiffs are blameless and which promises a disastrous result entirely unintended by any of them or any of the parties acting for

and in their behalf. Plaintiffs were in no way negligent or careless. Defendants knew or should have known that a serious mistake had occurred, and they are seeking by means of said unintended mistake to unjustly and unconscionably enrich themselves at the expense of plaintiffs. On August 10, 1946, plaintiffs tendered Construction Service, Inc. $8,100, which sum represents all the moneys that defendants have invested in said transaction, together with six percent interest. Defendants refused to accept said money, and plaintiffs stand ready to pay to defendants or into court this amount in full.

Defendants separately demurred to the complaint setting out the above facts. The court overruled the demurrers and in its memorandum stated:

"The modern trend of authorities gives relief in equity for mistakes of law as well as mistakes of fact, especially where very heavy losses to an innocent party on the one hand or unjust enrichment of the other party involved will result if relief be not granted. The most enlightening decision in this state sustaining this view is Peterson v. First National Bank, 162 Minn. 369, 203 N. W. 53, 42 A. L. R. 1185.

"Emphasizing the same doctrine under varying circumstances, are the cases of Hirleman v. Nickels, 193 Minn. 51 [258 N. W. 13] ; Stark v. Equitable Life Assurance Society, 205 Minn. 138 [285 N. W. 466] ; Holmes v. Conter, 209 Minn. 144, 149 [295 N. W. 649, 651], and St. Nicholas Church v. Kropp, 135 Minn. 115 [160 N. W. 500, L. R. A. 1917D, 741]."

Obviously, there was a mistake of either law or fact, or both, in which innocent parties are threatened with a very heavy loss and an unjust enrichment will come to the other parties. Defendants contend that equity is helpless in such a situation and must let the innocent parties suffer the loss and the benefited parties enjoy their unjust enrichment. Plaintiffs contend that equity is not helpless and that the case of Peterson v. First Nat. Bank, 162 Minn. 369, 203 N. W. 53, 42 A. L. R. 1185, *supra*, is authority for their contention. In that case, a farm worth $21,000 was sold in 1919 and conveyance made to the purchasers on March 1, 1920. Plaintiff, the seller, took back a purchase money mortgage for $14,400. The purchasers paid

the first year's interest but defaulted in the next installment of $722.40. Plaintiff employed attorneys to foreclose. The attorney who had charge of the foreclosure was guilty of (162 Minn. 370, 203 N. W. 53) "inadvertence and mistake," in that he did not discover and make use of the clause in the mortgage permitting the maturing of the entire debt upon any default. Mistaken in fact about the acceleration clause and mistaken also as to the law of foreclosure, the attorney foreclosed and sold for only the interest then delinquent. The property was bid in for plaintiff by his attorney for $835.50. Thus, plaintiff was put in the way of losing, for $835.50, the ample security for his claim of $15,000, which, minus the mortgage, was worthless. The purchasers and mortgagors traded their equity to a codefendant, a motor company, which took a quitclaim deed of the farm in exchange for a bill of sale of certain motor trucks. A creditor of the motor company redeemed by paying the sheriff $884.67. The foreclosure and redemptions were regular in form. Provision was made for placing defendant redemptioners *in statu quo,* the whole purpose being to restore all the parties to the position they would have occupied had there been no attempt at foreclosure and to permit plaintiff to foreclose anew. We have not attempted to set out all the facts. After stating the facts in full, the court said (162 Minn. 374, 203 N. W. 54) :

"The problem is whether, in view of what followed, equity can relieve plaintiff against the blunder of his attorney, a unilateral mistake of fact and law combined. It is a difficult question and upon the answer depends most of the accumulations of one citizen's lifetime."

After considering certain questions, the court continued (162 Minn. 375, 203 N. W. 55) :

"Two other preliminary observations are to be made—first that the plaintiff himself is acquitted of negligence by a finding so supported by evidence as to be conclusive upon us. The other is that none of the defendants will suffer from the decision under review, except as they are denied an unconscionable advantage. As to all

of the defendants, particularly those who have appealed, the status quo will be restored. On their own commendably frank testimonial admissions, they will have every benefit and advantage expected from the original transaction between the Benekes and the motor company. It is therefore too clear for sincere question that the relief below accomplishes simple justice. We affirm, for the equity of the case is clear."

So in the instant case, the complaint indicates no negligence on the part of plaintiffs. Neither does it show that defendants will suffer if plaintiffs are successful, except that they are denied an unconscionable advantage. The amended complaint alleges that plaintiffs have duly tendered the lienholder's assignee the sum of $8,100, representing all the moneys invested by it in the transaction, together with interest at six percent per annum. Thus, it appears, as the trial court said, "that the *status quo ante* can be attained."

In the Peterson case, the court goes on to say (162 Minn. 378, 203 N. W. 56):

"Defendants urge that they are being deprived of their vested legal rights as redemptioners. The answer is that the right they assert is not one which can be acquired by consciously taking advantage of the obvious blunder of another. It is not protected against the vitiating effect of the inequitable conduct out of which it sprung. There is a taint of heredity which denies it the inheritance of legal protection which it might otherwise possess. In such a case, this court will not permit a naked legal right to be used as the instrument of injustice and the means of depriving another of a clear and dominant equitable right."

The complaint alleges, as has been stated, that defendants were fully aware of the entire situation and knew or should have known that a mistake and inadvertence had occurred. The court in the Peterson case quotes Professor Williston in his work on Contracts, § 1497, where the latter states that it is (162 Minn. 379, 203 N. W. 57) "obvious justice that mistake by one party and knowledge of the mistake by the other, will justify relief as fully as mutual mistake."

The court there stated that in granting relief from unilateral mistake courts must be cautious.

In Nadeau v. Maryland Cas. Co. 170 Minn. 326, 329, 212 N. W. 595, 596, this court again quoted the same language of Professor Williston given in the Peterson case.

In Holmes v. Conter, 209 Minn. 144, 149, 295 N. W. 649, 651, the court said:

"* * * It is unconscionable to see these elderly defendants, who had paid $563.08 to redeem their property, worth about $2,500, deprived of it for the paltry sum of $35.91.

"It is the duty of courts to prevent, if possible, such unjust results. * * * This court on other occasions has wielded that power effectively. Peterson v. First Nat. Bank, 162 Minn. 369, 203 N. W. 53, 42 A. L. R. 1185."

See, also, Olson v. Shephard, 165 Minn. 433, 206 N. W. 711; Des Moines Joint Stock Land Bank v. Danicourt, 185 Minn. 435, 241 N. W. 393; Stark v. Equitable L. Assur. Society, 205 Minn. 138, 285 N. W. 466; Fleming v. Miller (D. C.) 47 F. Supp. 1004, 1010.

It is our opinion that the ruling of the trial court is correct. Here, through a mistake, of which, under the allegations of the complaint, defendants were aware, a widow and four children would lose property worth $40,000 at their valuation for an indebtedness of about $8,000 and defendants would receive an unjust enrichment equal to plaintiffs' loss. The result is obviously unjust, and equity, under the facts pleaded in the complaint, if proved, is not powerless to prevent such injustice.

Order affirmed.