In the Matter of the Petition of MIDWEST FEDERAL SAVINGS AND LOAN ASSOCIATION OF MINNEAPOLIS, For a New Certificate of Title After Mortgage Foreclosure Sale.

MIDWEST FEDERAL SAVINGS AND LOAN ASSOCIATION OF MINNEAPOLIS, Petitioner, Respondent (C7–84–537),

v.

COMMUNITY INSURANCE AGENCY, INC., et al., Appellants (C7–84–537 & CX–84–628),

v.

Fredrick L. KEMPER, et al., Respondents (CX–84–628),

Midwest Federal Savings and Loan Association of Minneapolis, Respondent (CX–84–628),

2730 Portland Properties, et al., Respondents (CX–84–628),

William J. Anderson, et al., Defendants (CX–84–628).

Nos. C7–84–537, CX–84–628.

Court of Appeals of Minnesota.

Dec. 4, 1984.

David Knodell, Olson, Gunn & Seran, Ltd., Minneapolis, for appellants.

Richard A. Grayson, Sanborn & Grayson, St. Paul, for Kemper et al.

Mark E. Greene, MacKinnan, Standke & Greene, Minnetonka, for 2730 Portland Properties.

William S. Borchers, Hessian, McKasy & Soderberg, Minneapolis, for Midwest Federal Sav. and Loan Assn.

Heard, considered and decided by WOZNIAK, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from judgment entered following trial consolidating parts of two matters, one a Torrens proceeding subsequent, and the other a civil action for declaratory judgment and damages. Respondent Midwest Federal foreclosed a mortgage which it held on the property, and, following the six-month redemption period, sold back the property to the fee owner. Appellant Community Insurance Agency [Community] is a junior lienholder which failed to redeem, and its interest was cut off by the foreclosure. It claimed fraud and an extension of the redemption period. At the consolidated trial, Midwest sought and obtained an order for a new certificate of title eliminating prior interests, while Community lost on its claims. We affirm.

## FACTS

Respondents Frederick Kemper, Merlin Boehmke and Donald Mork [hereafter, K/B/M], became fee owners of an apartment building at 2730 Portland Avenue on August 2, 1977. At that time, they mortgaged the property to Midwest Federal to secure a $235,000 loan. The mortgage included a "due on sale" clause allowing Midwest to accelerate the balance due if the property were sold.

K/B/M sold the property on August 31, 1977, to the Bonnicksens for $345,000 by contract for deed [hereafter, CD1], the Bonnicksens assuming the balance of the Midwest mortgage. The Bonnicksens, in turn, sold the property on April 4, 1979, to the Andersons, again by contract for deed

[CD2]. The Andersons assumed the balance on the Midwest mortgage, and on CD1, which was held by K/B/M. As a part of this transaction, appellant Community Insurance purchased the vendor's interest in CD2, which had a principal amount of $87,727. Midwest did not exercise its right under the "due on sale" clause following either of these sales.

There were three more sales of the property, all on contracts for deed, the last sale being to respondent 2730 Portland Properties [hereafter, Portland], on June 1, 1981. Upon discovering this sale, Midwest chose to exercise its right to call the balance due, by letter dated July 20, 1981. When payment was not received, Midwest began foreclosure proceedings, in October, 1981.

Personal notice of foreclosure was served on all parties, including Community. The foreclosure sale was held on December 23, 1981, at which time Midwest purchased the property for $243,000. The six-month redemption period, therefore, would expire on June 23, 1982.

In the meantime, K/B/M had begun cancellation proceedings on its contract for deed, CD1, alleging default in the failure of subsequent vendees, who had all assumed the Midwest mortgage, to pay off the mortgage balance on demand. Community received the notice of cancellation, but, as with the foreclosure by Midwest, took no action to protect its interest.

Community's president, Raymond Dana, an experienced lawyer, banker and real estate broker, admitted that he was negligent in not taking action. He claimed, however, to have received assurances from K/B/M and its attorney that no action was necessary, and that refinancing was being sought which would clear up the foreclosure. Dana also claimed to have relied on an insurance binder he received for the property, which showed Community's interest, as well as an action for an injunction against the foreclosure brought by Portland.

In addition to the injunction (which was later denied), both Portland and K/B/M sought to solve their problem by negotiat-

ing to buy back the property from Midwest. The plan called for simultaneously-executed option contracts, with Midwest selling to K/B/M, and K/B/M selling to Portland, with financing to be provided by a new mortgage from Midwest.

These negotiations resulted in a Midwest mortgage loan commitment, on February 10, 1982. The commitment, however, was cancelled when the title failed to clear, due to defects in the cancellation proceedings on CD1. Thus, appellant Community Insurance appeared to retain an interest in the property barring the sale (and creating a right of redemption).

K/B/M and Portland attempted to renew negotiations with Midwest Federal to resurrect the plan. Portland's attorney wrote to Midwest Federal on April 6, 1982:

Our proposal is that fee title to the real property will be vested in Midwest Federal upon the expiration of the period of redemption *thereby cutting-off any right, title or interest of the fee owners [K/B/M], and their contract for deed successors in title.* (Emphasis added).

Midwest Federal replied by rejecting the proposal, pending the expiration of the redemption period:

The property is presently in redemption and unless redeemed Midwest Federal will acquire ownership on June 23, 1982. At that time, we will be in a position to discuss a possible sale of the property.

K/B/M and Portland, however, continued their efforts to reach an agreement before the redemption period expired. Informal assurances were sought from Midwest through contacts made by Jerry Hansen, a former owner of the property who had contacts at Midwest. Hansen admitted approaching Midwest about the matter during the redemption period, but testified that he was told Midwest could not discuss it at that time. Community alleges that a verbal agreement was reached.

On June 15, 1982, K/B/M submitted a purchase agreement to Midwest which substantially followed the earlier agreement. This purchase agreement, as well as that

between K/B/M and Portland, was executed after June 23. Thus the deal for resale of the property was completed, along the lines earlier proposed, following the expiration of the redemption period.

## ISSUES

1. Did Midwest Federal, Portland, and K/B/M agree to a post-redemption-period sale before the expiration of the redemption period?

2. Did negotiations among these parties, occurring before expiration of the redemption period, result in a redemption or an extension of the redemption period?

3. Did Community's failure to attempt redemption during the statutory period bar its claims?

4. Was the evidence sufficient to show fraud?

## ANALYSIS

*1. Existence of an agreement*

The trial court made the following finding:

Prior to the expiration of the redemption period, Midwest Federal did not enter into any contract, nor did it give any noncontractual assurances to any of the co-defendants that it would sell the property to them or any of them after the redemption period expired.

Midwest Federal did make a mortgage loan commitment to Portland on the property, on February 10 (during the redemption period). This commitment envisioned a sale to K/B/M with resale to Portland, a deal substantially the same as that later executed following the redemption period. This loan commitment, however, was based on the cancellation of the contract for deed which K/B/M had purportedly completed. The commitment, therefore, assumed that other interests, specifically including that of Community, had been eliminated. When the cancellation proceedings proved to be defective, Midwest, in written correspondence, refused to renew the loan commitment or discuss further the sale of the

property until the end of the redemption period.

■ Community's theory was that a verbal agreement was reached among the parties. Community, however, failed to present sufficient evidence to support its theory. The alleged "contact" for this agreement, Jerry Hansen, admitted approaching Midwest about the matter during the redemption period, but testified that he was told Midwest couldn't discuss it at that time. Midwest's interest in foreclosing based on the "due on sale" clause, was simply one of replacing a mortgage paying 9½ per cent interest, with one bearing a current market rate (here, 14 per cent). It might naturally prefer to resell the property to the existing owners, thus avoiding a change in management of the rental property. K/B/M and Portland agreed to the higher interest rate. Midwest, however, acted properly, refusing by verbal as well as written communication to discuss resale before the redemption period expired, once it had become clear that the cancellation was defective.

### 2. Redemption or extension of the redemption period

Community contends that the negotiations of Midwest, K/B/M, and Portland should be construed as a redemption or an extension of the redemption period.

In *Oertel v. Pierce*, 116 Minn. 266, 133 N.W. 797 (1911), the supreme court held that where the mortgagee purchased the property at the foreclosure sale, and thereafter entered into an agreement with the mortgagor extending the time for payment of the mortgage debt, the legal effect of the agreement was to waive the rights acquired under the foreclosure and extend the period of redemption.

In *Oertel*, rights of third parties not involved in the mortgage foreclosed, but possessing separate interests in the property, were not at stake. There were no other rights of redemption which might have been cut off by the agreement of the parties. Similarly, in *Investors' Syndicate v. Horrigan*, 186 Minn. 599, 244 N.W. 65 (1932), the only outstanding interest other than those of the contracting parties which gave a right of redemption was brought out before the end of the redemption period.

Here, Community's theory is that the negotiations among Midwest, Portland and K/B/M interfered with its right, as a junior lienholder, to redeem the property. Community does not explain how it was prevented from redeeming, if it had filed notice of intent to redeem within the statutory period and tendered the redemption amount. *See*, Minn.Stat. § 580.24, .25 (1982).

■ A fee owner and mortgagor who has agreed with the mortgagee to allow the foreclosure to proceed in return for a retransfer after the redemption period, may rely on such an agreement. *See, Lee v. Construction Service*, 224 Minn. 149, 28 N.W.2d 69 (1947). We do not see how a junior lienholder such as Community, a stranger to the alleged agreement, can claim such reliance.

### 3. Failure to attempt redemption

Community made no attempt to redeem the property, although it received notice of the foreclosure. Community's president, an experienced lawyer, banker and real estate broker, took no action in the face of both a cancellation proceeding and a foreclosure. He admitted his own negligence.

■ Community's failure to redeem bars its statutory claim for an extension of the redemption period. Strict compliance with the statute is required of all lienholders. *Graybow-Daniels Co. v. Pinotti*, 255 N.W.2d 405 (Minn.1977). Moreover, there is no showing that the actions of the respondents would have interfered with Community's redemption right, if timely asserted.

### 4. Fraud

■ In order to recover on its claim of fraud, Community must show, among other elements, a false representation of a past

or present material fact, upon which it justifiably relied. *Davis v. Re-trac Manufacturing Corp.*, 276 Minn. 116, 149 N.W.2d 37 (1967).

█ The trial court found that Midwest Federal made no representations to Community, and that Community did not justifiably rely on any representations made by K/B/M or Portland. The evidence amply supported these findings. It showed that Community's president, an experienced lawyer and businessman, should not have relied on any representations of K/B/M or Portland as to the foreclosure proceedings brought by Midwest.

## DECISION

There was no agreement, written or oral, before the redemption period expired, to resell the property in violation of Community's redemption rights. The negotiations that did occur did not result in a redemption, or an extension of the redemption period. Community did not justifiably rely on any representations made to it concerning those negotiations.

Affirmed.