# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-2079

———————

Real Estate Equity Strategies, LLC, a    \*
Minnesota limited liability company,    \*
   \*
        Appellant,    \*
   \*    Appeal from the United States
     v.    \*    District Court for the
   \*    District of Minnesota.
Internal Revenue Service; Department    \*
of the Treasury,    \*
   \*
        Appellees.    \*

———————

Submitted: January 17, 2008
Filed: August 28, 2008

———————

Before COLLOTON and SHEPHERD, Circuit Judges, and GOLDBERG,[1] Judge.

———————

COLLOTON, Circuit Judge.

Real Estate Equity Strategies, LLC (REES), brought this quiet title action against the Internal Revenue Service (IRS), alleging that the IRS's redemption on a parcel of property was untimely and therefore invalid. The district court[2] granted the

———————

[1]The Honorable Richard W. Goldberg, Judge of the United States Court of International Trade, sitting by designation.

[2]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

IRS's motion for summary judgment and dismissed the case, determining that REES lost its ability to challenge the IRS's redemption when it failed to tender sufficient funds in its own attempted redemption. We affirm.

I.

On January 27, 1990, James and Kathryn Moore purchased a parcel of property located at 14909 Crown Drive, Minnetonka, Minnesota, and assumed a mortgage held by Duval Federal Savings & Loan Association (Duval). Because the Moores failed to pay their income taxes from 1987 to 1994, the IRS filed three separate tax liens on the property in 1996. The Moores also defaulted on their mortgage. Midland Mortgage Company, the assignee of the Duval mortgage, foreclosed on the mortgage, and the property was sold at a sheriff's sale on September 16, 2004, to Avidigm Capital Group, Inc. (Avidigm) for $90,000. Under Minnesota law, the Moores were given six months to redeem the property. Minn. Stat. § 580.23 (1994). During the redemption period, the Moores granted to REES six separate mortgages, all supported by consideration. Both the IRS and REES filed Notices of Intention to Redeem with the Hennepin County Recorder during the Moores' redemption period.

The Moores failed to redeem within the six month period, and the right to redeem passed to the IRS as the most senior creditor. *See* Minn. Stat. § 580.24(a) (1994). Because the IRS had three separate liens on the property, it had 21 days – three consecutive 7-day redemption periods – to redeem. Minn. Stat. § 580.24. The Moores' redemption period had expired on March 16, 2005, giving the IRS until April 5, 2005, to redeem.

The IRS, however, did not attempt to redeem until April 11, 2005, six days after the expiration of its redemption period. The Hennepin County Sheriff rejected the IRS's attempted redemption and declined to issue a Certificate of Redemption, explaining that the IRS could no longer redeem because its redemption period had

expired. The IRS then executed its own Certificate of Redemption, using the statutory grant of authority in 26 U.S.C. § 7425(d). The IRS filed the certificate with the Hennepin County Recorder, along with an affidavit representing the Moores' outstanding debt (and the base amount to be tendered by any subsequent redemptioner) to be $309,952.12. The IRS then directed the sheriff to forward the redemption money to Avidigm, the holder of the sheriff's certificate of sale. The sheriff did so.

Just over one month later, REES, the junior creditor, attempted to redeem the property from Avidigm, presumably believing that the IRS's attempted redemption was invalid. Avidigm declined to issue a certificate of redemption, explaining to REES that the IRS already had issued its own certificate, and that Avidigm had accepted the funds from the IRS's redemption. REES then attempted to redeem from the sheriff the next day. The sheriff also rejected REES's attempted redemption, explaining that the IRS held the certificate of redemption, and that the amount tendered by REES, $96,915.77, was "insufficient to pay the prior redeeming lienholder [i.e., the IRS] the amount shown in its affidavit [($309,952.12)]." The sheriff agreed to hold the funds until the matter was resolved in court.

REES left the funds in the care of the sheriff and challenged the IRS's redemption in the United States District Court for the District of Minnesota. The district court initially agreed with REES, finding that the IRS had failed timely to redeem and holding that the IRS's certificate must be revoked. But the court did not enter final judgment on the matter, reasoning that Avidigm probably "had an interest in whether [REES] tendered an amount sufficient to redeem."

The court reconsidered the order six months later and reversed course, determining that REES could not contest the IRS's redemption, because it had not "'availed [itself] of the right to redeem strictly in accordance with the provisions of the [redemption] statute.'" The court pointed to the sum tendered, an amount equal

to that which the IRS had tendered more than five weeks before, and explained that REES had failed to include interest from the time of the IRS's redemption to the time of its own redemption. Thus, the court reasoned, REES forfeited its interest in the property and its related right to contest the IRS's interest by failing to tender sufficient funds within the allotted time for redemption. Because REES could not contest the IRS's redemption, the district court granted the IRS's motion for summary judgment, leaving the IRS's redemption in force. REES appealed.

## II.

Minnesota long has followed the rule that "the only person who may attack a redemption, fair on the face of the record, but wrongful in fact, where the redemption money has been accepted by the one holding the title of the purchaser at the foreclosure sale, is one who has still some beneficial interest in the land, or one who, being a subsequent lienholder, has availed himself of the right to redeem strictly in accordance with the provisions of the statute." *Orr v. Sutton*, 148 N.W. 1066, 1069-70 (Minn. 1914). Thus, REES must demonstrate that it has a valid interest in the property through availing itself properly of a right to redeem.

REES argues that it preserved its interest in the property – its right to redeem – by tendering $96,915.77 to Avidigm and then to the sheriff. REES is correct that tender and its subsequent refusal "will preserve and protect the right of the redemptioner to have the redemption perfected, if such right is seasonably asserted." *Schroeder v. Lahman*, 9 N.W. 173, 174 (Minn. 1881). But the junior creditor (and potential redemptioner) must have "availed himself of the right to redeem strictly in accordance with the provisions of the statute." *Orr*, 148 N.W. at 1070. In claiming that the IRS's redemption was invalid, REES treated that redemption as non-existent and tried to redeem from Avidigm and then from the sheriff. REES's initial actions were correct; when challenging another's redemption as invalid, the challenging party

-4-

should treat the prior redemption as if it has no legal effect. *See Lehtinen v. Gerr*, 367 N.W.2d 595, 597-99 (Minn. Ct. App. 1985).

But to preserve the rights of the potential redemptioner, Minnesota law requires that the attempted tender be timely and accurate. *See Sieve v. Rosar*, 613 N.W.2d 789, 794 (Minn. Ct. App. 2000); *Sardeson v. Menage*, 43 N.W. 66, 66 (Minn. 1889) (explaining that "production of original documents" showing a right to redeem and "the due payment of the required sum" are "all that is essential to protect the rights of the purchaser"). "The right of redemption is a strict legal right, to be exercised, if at all, in accordance with the terms of statute by which the right is conferred, unless waived or extended by the party whose interests are to be affected." *In re Petition of Nelson*, 495 N.W.2d 200, 202 (Minn. 1993) (quoting *State ex rel. Anderson v. Kerr*, 53 N.W. 719, 719 (Minn. 1892) (citations omittted)); *see also Graybow-Daniels Co. v. Pinotti*, 255 N.W.2d 405, 407 (Minn. 1997) ("[W]e continue to hold that the redemption requirements of Minn. Stat. § 580.24 must be strictly adhered to"); *Moore v. Penney*, 170 N.W. 599, 600 (Minn. 1919) (explaining that the "statutory requirements are mandatory"); *In re Petition of Midwest Fed. Sav. and Loan Assoc. of Minneapolis*, 359 N.W.2d 33, 37 (Minn. Ct. App. 1984) ("Strict compliance with the statute is required of all lienholders.").

Because REES viewed the IRS's redemption as invalid, it was obliged to proceed as though its redemption attempt was directed to the holder of the certificate of sale, Avidigm. Minnesota Statute sections 580.23 and 580.24 allow a creditor to redeem from a holder of the certificate of sale "by paying the sum of money for which the [property was] sold, with interest from the time of sale at the rate provided to be paid on the mortgage debt and, if no rate be provided on the mortgage note, at the rate of six percent per annum, together with any further sums which may be payable as provided in section 582.03 and 582.021." Minn. Stat. § 580.23. This sum "may be paid to the holder of the sheriff's certificate of sale . . . or to the sheriff for the holder." Minn. Stat. § 580.24. The sheriff's refusal of accurate and timely tender does not

extinguish the creditor's rights in the property, but preserves them pending resolution of any underlying dispute. *Schroeder*, 9 N.W. at 174.

REES attempted to redeem from Avidigm and then from the sheriff, but was rebuffed on both occasions. If REES's tender was accurate and timely, this would be enough to preserve its rights. *Id.* Because REES attempted to redeem on May 17, 2005, correct tender would consist of the amount paid by Avidigm at the foreclosure sale, $90,000, plus interest calculated at six percent per annum from the date of the sheriff's sale, September 16, 2004, to the date of redemption, and any additional costs. *See* Minn. Stat. 580.23, subd. 1.[3] REES, however, did not tender the amount required by statute. Rather, REES tendered the same amount that the IRS had delivered five weeks earlier. This amount represented the purchase price, costs, and interest calculated at six percent per annum from the date of the sheriff's sale to April 5, 2005, not May 17, 2005. As a result, REES's tender did not include over five weeks of interest, and it was therefore insufficient.

REES relies on *United States v. Dairy Farm Leasing Co.*, 747 F. Supp. 1335 (D. Minn. 1990), for the proposition that tendering the wrong amount to the sheriff is enough to preserve a right to redeem. *Dairy Farm* did allow the plaintiff to proceed with its suit even though its tender had been incorrect. *See id.* at 1339. We respectfully decline to follow this decision, however, because we think the Minnesota cases declaring a requirement of strict compliance with the redemption statute are a better indicator of Minnesota law on the point. *Nelson*, 495 N.W.2d at 202; *Graybow-Daniels Co.*, 255 N.W.2d at 407; *Orr*, 148 N.W. at 1069-70; *Kerr*, 53 N.W. at 719; *Sieve*, 613 N.W.2d at 794; *Midwest Fed. Sav. and Loan Assoc.*, 359 N.W.2d at 37.

---

[3]The statute explains that interest should be calculated "at the rate provided to be paid on the mortgage debt," and only at six percent if no rate is provided. It is unclear whether the mortgage note provided a rate, as the note is not in the record. Because neither party argues otherwise, we assume that the rate of six percent per annum is the proper rate to apply.

Finally, REES claims that the missing interest should not bar it from challenging the IRS's redemption, because that is not the reason why Avidigm and the sheriff rejected its tender. REES suggests that it would have cured the defect in its tender had the sheriff pointed it out. But REES cannot blame the sheriff for a mistake it could have discovered on its own. *See Higgins v. Trauger*, 632 N.W.2d 463, 470 (N.D. 2001) ("[W]hen a failure to timely redeem is attributable in part to the neglect of the redemptioner, and not wholly to the mistake of the public official, the attempted redemption will not be upheld."). The redemption statute is clear that accurate tender includes interest from the date of the sheriff's sale up to the date of the attempted redemption. Minn. Stat. § 580.23. Because REES did not comply with the statutory requirements, it lost any interest in the property when its redemption period expired on May 18, 2005.

The judgment of the district court is affirmed.

_____